**DISTRICT 65 RETIREMENT TRUST FOR MEMBERS OF the BUREAU OF WHOLESALE SALES REPRESENTATIVES, Harrison J. Goldin, Its Trustee, NBA Residual Benefit Fund, NBA Special Purpose Fund, Bureau Deferred Compensation Fund, Michael A. Wolyn, Their Trustee, and The Bureau Foundation, Inc., Plaintiffs,**

**v.**

**PRUDENTIAL SECURITIES, INC., and William L. Kicklighter, Jr., Defendants.**

Civil Action No. 1:94–cv–3224.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 7, 1996.

Order Amending Decision
March 13, 1996.

Order Denying Stay March 22, 1996.

Order Amending Decision,
April 29, 1996.

1554

John Allen Howard, Marion Smith, II, Linda Susan Pacer, Smith Howard & Ajax, Atlanta, GA, for District 65 Retirement Trust for Members of the Bureau of Wholesale Sales Representatives, Harrison J. Goldin, NBA Residual Benefit Fund, NBA Special Purpose Fund, Bureau Deferred Compensation Fund, Michael A. Wolyn, and the Bureau Foundation, Inc.

David G. Russell, William J. Holley, II, Alexandra Coulter Cross, Nancy H. Baughan, Parker Hudson Rainer & Dobbs, Atlanta, GA, for Prudential Securities Incorporated.

Jo Lanier Meeks, Pursley Howell Lowery & Meeks, Atlanta, GA, for William L. Kicklighter, Jr.

### CORRECTED ORDER [1]

HUNT, District Judge.

Before the Court are defendants' motions to dismiss [8] or, in the alternative, to join persons needed for just adjudication of the

1. This order supersedes the order of this Court dated February 12, 1996, and corrects *only* typographical errors.

issues presented to the Court [7]. Also before the Court is plaintiffs' motion for a pretrial conference and scheduling order [27]. This Court has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1), 18 U.S.C. § 1964, and 28 U.S.C. § 1331.

### Standard for Motion to Dismiss

■ Pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court may dismiss an action if the plaintiff has failed to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). The Court must ascertain whether, under any set of facts which may be proven from the complaint, the claims made are so insufficient as to never succeed in court. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *see Oladeinde v. Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993). Therefore, for the purposes of the motion to dismiss, the Court accepts all of plaintiffs' factual allegations as true and liberally construes the complaint. *See Hartford Fire Ins. Co. v. California,* 509 U.S. 764, ——, 113 S.Ct. 2891, 2917, 125 L.Ed.2d 612 (1993). Defendants contend that, even accepting the plaintiffs' factual allegations as true, the complaint fails as a matter of law.

### I. BACKGROUND

In compliance with the above standard, below is a summary of the facts as alleged in plaintiffs' complaint. These facts are not binding on the Court in deciding future motions.

District 65 Retirement Trust for Members of the Bureau of Wholesale Sales Representatives ("District 65"), through its trustee Harrison J. Goldin, brings this action as an employee benefit plan within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(3). The National Benevolent Auxiliary ("NBA") Residual Benefit Fund [2] and the NBA Special

2. The NBA Residual Benefit Fund provides catastrophic medical insurance for Bureau members.

Purpose Fund,[3] through their trustee Michael A. Wolyn, bring this action as employee welfare benefit plans under ERISA, 29 U.S.C. § 1002(1); the Bureau Deferred Compensation Fund[4] (collectively the "Bureau Funds"), also through Wolyn as trustee, brings this action as an employee pension benefit plan under ERISA, 29 U.S.C. § 1002(2). The fifth plaintiff, the Bureau Foundation, Inc., provides financial assistance to elderly members of the Bureau and their spouses; it is not governed by ERISA, but is a tax-exempt charitable organization under Internal Revenue Code ("IRC") section 501(c)(3).[5]

District 65 is a voluntary pension plan and trust that provided employee benefits for retirement, death and disability to members of the Bureau of Wholesale Sales Representatives, Inc. ("Bureau") who were also members of United Automobile, Aerospace and Agricultural Implement Workers of America, UAW ("Union"). The Union is a labor union affiliated with the AFL–CIO. The benefits were paid out of earnings generated from payments made by plan participants or on their behalf. District 65 has not paid any benefits to its participants since December 1992. Until 1993, a seven-member Board of Trustees ("Board") administered District 65.[6]

In 1983, the District 65 trustees appointed a former District 65 trustee and retiring Bureau member, Marshall J. Mantler, as their investment advisor pursuant to ERISA, 29 U.S.C. §§ 1002(38), 1102(c)(3), and 1103(a)(2). District 65 hired Mantler as investment manager primarily to assist him financially during his retirement. At the time of his appointment, Mantler was sixty-five years old. Mantler was to manage the accounts in coordination with a hired full-service broker. In 1984, Mantler registered

individually with the Securities Exchange Commission as an investment advisor.

In 1984, Mantler became acquainted with defendant William L. Kicklighter, Jr. at Prudential Securities, Inc. ("Prudential"). Mantler and Kicklighter, despite an approximate forty-year age difference, developed a close relationship. Kicklighter sought and obtained Mantler's trust and confidence regarding the plaintiffs' investments. Mantler told Kicklighter that the plaintiffs were facing financial trouble because of declining membership; he speculated that the plaintiffs' accounts had to earn a high rate of interest, approaching twenty-one percent, to avoid reducing members' benefits. Mantler also stressed to Kicklighter the need to avoid speculative investments and to build the portfolio from safe, conservative and diversified investments. Mantler conducted several discussions with Kicklighter prior to opening an account on behalf of District 65 at Prudential's Atlanta office in November 1985. Despite Mantler's discussions with him, Kicklighter noted on the new customer information form that the account's investment objectives were "speculation" and "long-term growth." Kicklighter did not provide this document to Mantler or to any of the District 65 trustees. The Bureau Funds opened accounts with Kicklighter and Prudential in April 1986.

During his term as investment manager, Mantler suffered from severe health problems, including alcoholism, peritonitis and abdominal abscesses. He had several surgeries and was hospitalized for a great deal of time. As a result of his medical problems, Mantler was under heavy medication for most of this period; the drugs he took included Demerol, Valium, Narcan, Percocet and Percodan. The combined effect of the drugs and alcohol

---

3. The NBA Special Purpose Fund provides death benefits for members and enrolled spouses over the age of 70.

4. The Bureau Deferred Compensation Fund provides deferred compensation benefits to participating key current and former Bureau employees.

5. Because the Bureau Foundation is not an ERISA entity, the Court construes the complaint

so as not to assert any ERISA claims by the Bureau Foundation against the defendants.

6. The District 65 trustees included, among others, David Livingston, Al Bemkopf, Frank Brown, and Al Dicker. Former Bureau trustees include Sol Marcus, Robert Dreyer and Sherwyn Syna. Three of the District 65 trustees were appointed by the Bureau; four of the trustees were appointed by the Union.

rendered Mantler ineffective at monitoring the accounts at Prudential.

Prior to his appointment as investment manager, Mantler had advised the plans informally regarding certain investments. After his appointment and the opening of the accounts at Prudential, the plans' trustees relied on Mantler to make the independent investment decisions based on Prudential's recommendations. The trustees were also elderly and in ill health. Several of the former trustees died before, and several since, the commencement of this action. As a result of Mantler's infirmities and the delegation of the trustees' responsibilities to Mantler, Kicklighter was able to propose transactions which were "rubber stamped" and executed the transactions without the prior knowledge or consent of Mantler or the former trustees. Kicklighter churned the accounts and executed numerous trades without advising Mantler.

The accounts had been opened only a few months when Kicklighter and Prudential began liquidating the plans' conservative portfolio investments and replacing those investments with speculative securities, junk bonds and Prudential proprietary products, limited partnerships and mutual funds. By 1987, Kicklighter was executing trades without ever advising Mantler or the trustees.

In 1986, Kicklighter proposed a highly risky trading strategy to boost the income on the accounts. Mantler and the District 65 trustees agreed, and Mantler and Dicker, on behalf of the Bureau Funds, executed option forms and agreements authorizing Kicklighter to engage in option trading on the plans' accounts. Prudential's own rules as well as ERISA regulations prohibited option trading on accounts of this type. Nevertheless, Prudential required that the trustees execute a Trustee Certification Form in December 1987, after the October 1987 stock market crash. The trustees executed the document. Accompanying that form, trustee Livingston sent a letter to Kicklighter and Prudential, which stated that margin trading should be limited to twenty percent of the portfolio and used to cover only short term situations or high yield bonds the return of which would exceed the cost of margin. Mantler was authorized to write only covered calls. Trustee Livingston's letter "had little effect on trading on the account" and it was "business as usual" for Kicklighter. Prudential and Kicklighter selected securities based primarily on their commissions and profitability to the firm rather than on their suitability as ERISA investments. During their relationship, the plans paid between $3,276,588 and $4,777,004 as commissions and fees to Kicklighter and Prudential for their investment advice.

Kicklighter met with Mantler frequently and spoke to him daily by telephone. Additionally, Kicklighter met with District 65 trustees Dicker and Brown and with trustee Syna for the Bureau Funds and the Bureau Foundation. Through these meetings, Kicklighter became aware that the parties were relying completely on Kicklighter to protect their investments.

In early 1989, Kicklighter was suspended by the SEC for activities unrelated to this case. On April 3, 1989, District 65's ERISA counsel, Michael C. Gordon, wrote to the trustees notifying them that Gordon had become aware of Kicklighter's suspension and would investigate possible misconduct by Kicklighter and Prudential in relation to the District 65 and Bureau accounts. Trustee Dicker received the letter and, as a result, called a meeting of the trustees and Mantler. One week later, the trustees directed Prudential to suspend all trading in the plans' accounts. The accounts eventually were closed in July 1989. On June 19, 1991, Gordon informed the trustees that Kicklighter and Prudential indeed had engaged in misconduct with respect to the plans' accounts.

On January 19, 1993, the Union filed for bankruptcy protection. Subsequently, because of District 65's poor financial health, three trustees who were appointed by the Bureau to the Board and three plan participants filed suit in the United States District Court for the Southern District of New York against the four trustees appointed by the Union. The plaintiffs in that suit sought termination of the District 65 plan with the distribution of the remaining assets to the participants. The Court instead directed that all of the current trustees resign and

appointed a successor trustee, Goldin. Goldin currently is the sole trustee of District 65.

The complaint alleges misdeeds by defendant Prudential S, and its former employee, Kicklighter. Specifically, the complaint alleges, *inter alia*, that Prudential and Kicklighter (1) invested the plans' money in unsuitable investment vehicles under District 65 and the Bureau Funds' standards; (2) engaged in unauthorized trading; (3) engaged in excessive trading or churning of the plans' accounts; (4) engaged in prohibited transactions under ERISA ("per se violations of ERISA"); (5) violated Prudential's internal rules, the rules of the National Association of Securities Dealers ("NASD"), the New York Stock Exchange ("NYSE"), and the Chicago Board Options Exchange ("CBOE"); (6) misrepresented and omitted material facts in its dealings with plans; (7) fraudulently concealed their activities; and (8) that Prudential failed to supervise Kicklighter as required by NYSE and NASD rules and by ERISA. The complaint, in essence, alleges that defendants are responsible for the financial collapse of District 65 and the Bureau Funds.

## II. DISCUSSION

A. *ERISA statute of limitations for breach of fiduciary duty*

■ Defendants' first contention is that the complaint is barred by the applicable statute of limitations for bringing claims under ERISA.[7] ERISA provides that

[n]o action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obli-

gation under this part, or with respect to a violation of this part, *after the earlier of*—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, *or*

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

*except that* in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113 (emphasis added). Under this section, three possible limitations periods may apply: (1) six years from the last date of breach; (2) three years from the date of actual knowledge of the plaintiff that a breach has occurred; and (3) six years from the date of discovery of the breach if there was fraud or concealment preventing the plaintiff from discovering earlier the breach or violation. Defendants contend that the knowledge of the former trustees should be imputed to the successor trustee plaintiffs, barring the action under (2), the three-year statute of limitations, for the former trustees' knowledge dating back to 1987. Defendants do not assert that if either six-year statute of limitations, (1) or (3), applied, then the actions would be barred. Plaintiffs plead and argue that defendants' fraud and concealment prevented earlier discovery of the breach of fiduciary duty and ERISA violations.

■ When construing statutory language, the Court begins with the plain lan-

7. The defendants, in their motion to dismiss, do not challenge whether Kicklighter and Prudential were fiduciaries for the purpose of applying the ERISA statute of limitations. Nevertheless, defendants contend elsewhere that they are not fiduciaries. Whether one is a fiduciary is a mixed question of law and fact that can only be made after more factual development than has been had in this case. *See Jones v. Childers*, 18 F.3d 899, 907 (11th Cir.1994); *Browning v. Peyton*, 918 F.2d 1516, 1522 (11th Cir.1990).

Although neither party has raised this issue, generally, statutes of limitations defenses cannot be raised on a motion to dismiss unless the

"complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 1 (3d Cir.1994) (interpreting the Federal Rules of Civil Procedure); *see also Reisman v. General Motors Corp.*, 845 F.2d 289, 291–92 (11th Cir.1988) (holding that, under Florida law, the affirmative defense of statute of limitations cannot be pleaded on a motion to dismiss unless " 'the complaint affirmatively and clearly shows the conclusive applicability' of the defense to bar the action") (quoting *Evans v. Parker*, 440 So.2d 640, 641 (Fla.Dist.Ct.App. 1983)).

guage of the statute. *In re Haas,* 48 F.3d 1153, 1155 (11th Cir.1995). The plain language of the statute controls unless literal application of the statute produces a result which is irreconcilable with the purpose of the statute. *Id.* (citing *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)). If Congress's intent is clear, then the Court may not use its policy concerns to circumvent that purpose. *Resolution Trust Corp. v. Fragetti,* 49 F.3d 715, 718 (11th Cir.1995) ("Once Congress has spoken to a policy issue, that is it, as far as courts are concerned."). Moreover, "[w]here Congress knows how to say something but chooses not to, its silence is controlling." *In re Haas,* 48 F.3d at 1156. The ERISA statute of limitations plainly states that it is the *plaintiff's* actual knowledge that triggers the three-year time bar. Had Congress wished to impute the knowledge of former fiduciaries to successor trustees, Congress certainly could have done so.[8] There is no language or policy of the ERISA breach of fiduciary duty provisions which indicates that Congress intended other than to look to the actual knowledge of the plaintiff in this case. However, this raises an additional dilemma regarding the identity of the plaintiffs for purposes of bringing the fiduciary duty claims.

■ ERISA provides that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity. Service of summons, or other legal process of a court upon a trustee or an administrator of an employee benefit plan in his capacity as such shall constitute service upon the employee benefit plan." Section 1132(d)(1). The plan, rather than individual beneficiaries, is the proper plaintiff when a breach of fiduciary duty is the basis for the action. *Simmons v. Southern Bell Tel. & Tel. Co.,* 940 F.2d 614, 617 (11th Cir.1991). However, because of issues

of standing under ERISA, the Court must ascertain whether the plan really is the actual plaintiff in a breach of fiduciary duty action.[9]

■ The circuit courts of appeals are split on the question of whether, under the statute, employee benefit plans have standing to bring ERISA breach of fiduciary duty actions on their own, and, thus, whether they can be plaintiffs in such actions. *Pressroom Unions–Printers League Income Sec. Fund v. Continental Assurance Co.,* 700 F.2d 889, 892–93 (2d Cir.), *cert. dismissed,* 463 U.S. 1233, 104 S.Ct. 26, 77 L.Ed.2d 1449, *and cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983); *Saramar Aluminum Co. v. Pension Plan for Employees of the Aluminum Indus. & Allied Indus.,* 782 F.2d 577, 581 (6th Cir.1986); *see generally Iron Workers Local # 272 v. Bowen,* 624 F.2d 1255, 1259 n. 5 (5th Cir.1980) (noting that issue had not been raised by the parties). The question is a jurisdictional one under section 1132(e) and section 1132(d)(1). Section 1132(e) provides that the district court has exclusive jurisdiction of civil actions under ERISA by the Secretary or by a "participant, beneficiary, fiduciary, or any other person referred to in section 1021(f)(1)." Section 1132(d)(1) provides that plans may sue or be sued in their own right as separate entities. The plans, however, are not participants, beneficiaries, fiduciaries, or referred to in section 1021(f)(1).

Because "plans" were not referred to specifically in section 1132(e), the Second Circuit concluded that the plans did not have standing under ERISA even though the plans could sue under other bodies of law. *Pressroom Unions–Printers League,* 700 F.2d at 893 ("Affording plans the power to sue does not, however, imply that they may bring actions under ERISA; it merely authorizes suits to be brought by funds in other situa-

---

**8.** The imputation of knowledge presupposes a relationship between the former and successor trustees so as to make the imputation of knowledge reasonable. This instant case is not one where a trustee had actual knowledge which could be imputed to each of his fellow trustees who are now plaintiffs; there is no evidence of a relationship between the former trustees and the successor trustees, particularly the one appointed by a federal court, which would make imputation of knowledge a viable alternative. *See* 29 U.S.C. § 1105(d)(1).

**9.** At oral argument, counsel for the plans and the trustees emphasized that there were only two plaintiffs—trustees Goldin and Wolyn. Defendants insisted that there were five separate plaintiffs—each of the benefit plans.

tions where there would properly be jurisdiction. For example, if a fund became involved in a contract dispute, and wished to pursue a state law contract claim, § 1132(d)(1) would allow the fund to bring such an action in its own name."). On the other hand, the Sixth Circuit concluded that the plan "as the party before the court, necessarily includes those who must act for the Plan to administer it and to effectuate its policies," and, therefore, the plan constituted a fiduciary for purposes of bringing a case under § 1132(e). *Saramar Aluminum Co.*, 782 F.2d at 581. *Cf. Coleman v. Champion Int'l Corp.*, 992 F.2d 530, 532 (5th Cir.1993) (construing strictly the jurisdictional grant under § 1132(a)); *Fentron Indus., Inc. v. National Shopmen Pension Fund*, 674 F.2d 1300, 1305 (9th Cir. 1982) (holding that employers may sue under § 1132(e) even though not listed; "[t]here is nothing in the legislative history to suggest either that the list of parties empowered to sue under this section is exclusive or that Congress intentionally omitted employers"); *Jones v. Trevor, Stewart, Burton & Jacobsen, Inc.*, No. 190CV0420JOF, 1992 WL 252137 at *3 (N.D.Ga. Aug. 21, 1992) (holding that former fiduciaries do not have standing to bring breach of fiduciary duty claims on behalf of the plan). Although the Second and Sixth Circuits have reached different conclusions, both courts apparently accept the proposition that if the current trustees of the plans, as fiduciaries, bring the action on behalf of the plans, then standing exists under section 1132(e). *See also Chicago Council of Carpenters Pension Fund v. Reinke Insulation Co.*, No. 94 C 2296, 1995 WL 383007 at *2 (N.D.Ill. June 23, 1995) ("The Funds' failure to name the trustees as plaintiffs is a pleading defect fatal to their claim as alleged under § 1132(a)(3)."). Accordingly, the plans' standing to bring ERISA breach of fiduciary duty claims is conferred by the current trustees, and, accordingly, Goldin and Wolyn are the plaintiffs for purposes of ERISA breach of fiduciary duty claims.

■ As the plaintiffs in this action, it is appropriate to ascertain when the *current* trustees had *actual* knowledge of the breach of fiduciary duties.[10] *Landwehr v. Dupree*, 72 F.3d 726, 731–32 (9th Cir.1995) (holding expressly that the knowledge of an agent of the plan is not determinative but instead that "the limitations period in an ERISA action begins to run on the date that the *person bringing suit* learns of the breach or violation" (emphasis added)); *Useden v. Acker*, 734 F.Supp. 978, 980 (S.D.Fla.1989), *aff'd*, 947 F.2d 1563 (11th Cir.1991), *cert. denied*, 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993); *Crimi v. PAS Indus., Inc.*, No. 93 Civ. 6394 (RPP), 1995 WL 272580, at *3, 1995 U.S.Dist. LEXIS 6180 at *8–*10 (S.D.N.Y. May 9, 1995) ("Most consonant with the language of the statute and the purposes of ERISA is the interpretation that any trustee who sues as plaintiff and does not have actual knowledge of the relevant facts sufficient to make an ERISA claim may avail himself of the six year limitations period."). *Cf. Pilkington PLC v. Perelman*, 72 F.3d 1396 (9th Cir.1995) (holding that section 1132(a) authorizes current fiduciaries of a plan to bring suit against the fiduciaries of a predecessor plan). Trustee Goldin was appointed by the United States District Court for the Southern District of New York as successor trustee for District 65 on February 16, 1993. Trustee Wolyn is executive director of the Bureau and is a trustee for the Bureau Funds. There are no allegations in the complaint that Goldin personally had actual knowledge of the breaches of fiduciary duty prior to 1993 or that Wolyn had actual knowledge prior to October 1991, when he attended his first trustees meeting. This action was filed on December 6, 1994. While this undoubtedly is more than three years from October 1991, on July 1, 1992, Prudential agreed to toll the statute of limitations until January 15, 1993, a total of 200 days. With this tolling period, plaintiffs filed their action even within the three-year statute of limitations.[11] Thus, the Court should find for pur-

---

10. Moreover, this is in keeping with the policy of ERISA evidenced by § 1113 to prevent fiduciaries who have breached their duties to the plan and the participants from escaping liability.

11. The defendants assert that the plaintiffs ratified the underlying transactions and thus are barred. The Court finds no evidence that the two current trustees ratified these transactions. *See NMS Indus., Inc. v. Premium Corp. of Am.,*

poses of the motion to dismiss by Prudential that this action was filed timely.[12]

However, Kicklighter did not enter into a tolling agreement. Therefore, assuming actual knowledge by the current trustee Wolyn in 1991, unless he can allege either fraud or concealment, for purposes of the motion to dismiss, then the three-year limitations period will bar him from carrying forward this action.[13] Wolyn alleges sufficiently the existence of fraud or concealment by Kicklighter for the Court to apply the six-year statute of limitations. The complaint alleges particularly that Kicklighter "concealed and omitted to state certain material and relevant facts" such as the amounts of commissions paid on transactions either in whole or in part, and the risk of the securities which the plans were holding, and the violations of federal and state law due to improper investment. This allegation is sufficient to meet plaintiffs' burden to withstand a motion to dismiss. Under the six-year limitations period in cases of fraud or concealment by the defendant, the cause of action would accrue when the plaintiff discovered the breach or violation. That date would be June 19, 1991. Accordingly, the action would not be barred. The six-year limitations period applies from June 19, 1991, and the claims on behalf of trustee Wolyn are timely.

## B. ERISA Preemption of State Law Claims

Defendants contend that, because the complaint alleges that defendants are fiduciaries, then all of the asserted state law claims which "relate to" the plans are preempted by ERISA's broad preemption clause.[14] ERISA preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). Both common law and statutory claims may be preempted. *Swerhun v. Guardian Life Ins. Co.*, 979 F.2d 195, 198–99 (11th Cir.1992). The raised state law claims are (1) breach of fiduciary duty; (2) fraudulent inducement of the plans into opening accounts at Prudential; (3) fraud in violation of O.C.G.A. §§ 51–1–6 and 51–1–2; (4) breach of contract; (5) negligence under O.C.G.A. §§ 51–1–6, 51–1–8, and 51–1–9; (6) negligence by Prudential in hiring Kicklighter in violation of O.C.G.A. § 34–7–20; and (7) failure to supervise Kicklighter by Prudential as required by the NASD Rules of Fair Practice, NYSE rules and Prudential's own corporate rules and regulations.

In enacting this preemption provision, Congress meant "to sweep more broadly than 'state laws dealing with subject matters covered by ERISA[,] reporting, disclosure, fiduciary responsibility, and the like.'" *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, — U.S. ——, ——, 115 S.Ct. 1671, 1680, 131 L.Ed.2d 695 (1995) (alteration in original) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, and n. 19, 103 S.Ct. 2890, 2900, and n. 19, 77 L.Ed.2d 490 (1983)). However, preemption is not intended to occur if the state law has only a "tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *District of Columbia v. Greater Washington Board of Trade*, 506 U.S. 125, 130 n. 1, 113 S.Ct. 580, 583 n. 1, 121 L.Ed.2d 513 (1992) (citations omitted). Nevertheless, even if the effect of the state law on the plan is "indirect," ERISA may preempt that pro-

---

*Inc.*, 451 F.2d 542, 544 (5th Cir.1971). Additionally, the Court finds that the doctrine of laches does not bar this action.

12. Because the Court concludes that the actions were filed timely under the ERISA three-year statute of limitations, the Court does not address the issue of whether the filing of the NASD arbitration by the plans tolled the ERISA statute of limitations or whether the continuing existence of a fiduciary relationship necessarily tolls the statute of limitations.

13. Trustee Goldin is not disabled similarly because it is clear that he did not have actual knowledge until 1993 and that, even if the six-year statute of limitations which accrued earlier applies, he is not time-barred.

14. Because the Bureau Foundation's trustee is not asserting ERISA claims on behalf of the Bureau Foundation, as it is not an ERISA entity, all of the state law claims may proceed with respect to the Bureau Foundation and the defendants.

vision. *Id.* at 130, 113 S.Ct. at 583; *but see Forbus v. Sears Roebuck & Co.,* 30 F.3d 1402, 1406 (11th Cir.1994) ("Rather, the state law in question must make reference to or function with respect to the ERISA plan in order for preemption to occur.") *cert. denied,* —— U.S. ——, 115 S.Ct. 906, 130 L.Ed.2d 788 (1995).

The complaint alleges that defendants are fiduciaries. Because the Court accepts that contention as true, then those claims which "relate to" the ERISA plans and the fiduciary duties of defendants, must be dismissed. The state common law and statutory claims which arise out of the same underlying facts as the ERISA claims for breach of fiduciary duties of the defendants are preempted. *Hoover v. Blue Cross & Blue Shield of Alabama,* 855 F.2d 1538, 1541 (11th Cir.1988) (holding that section 1132 provides the exclusive remedy for breach of fiduciary duty claims, and, thus, ERISA preempts all related state common law claims). Although *Hoover* addressed the claims of plan beneficiaries against plan administrators, the claims presented here are no less related to ERISA than those presented in *Hoover.*[15] Accordingly, the claims for negligence, fraud, breach of state fiduciary duty, Georgia RICO, failure to supervise, negligent hiring, breach of contract and fraudulent inducement are preempted.[16]

---

**15.** In *Forbus,* the Eleventh Circuit construed more narrowly the preemptive effect of ERISA. In that case, the Court implicitly required a *"clear* connection" between the plan and the state law claims. *Forbus,* 30 F.3d at 1407 (emphasis added). Nevertheless, in this case, because the existence of the ERISA plans is in fact "critical" to the breach of fiduciary duty claims, the reasoning in *Forbus* does not prevent these state law claims from being preempted. *See also Amos v. Blue Cross–Blue Shield of Alabama,* 868 F.2d 430, 431 (11th Cir.) (per curiam) (holding that the effect of ERISA preemption is to "completely displace state law claims."), *cert. denied,* 493 U.S. 855, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989).

**16.** The Court recognizes that the Secretary of Labor's amicus brief attempts to carve out two state law claims to survive preemption, breach of contract and fraudulent inducement, and mentions two others, failure to supervise and negligent hiring, as possibly not preempted. However, the Court finds that those claims as well relate to the ERISA plan and, thus, are preempt-

## C. *Federal RICO enterprise and conspiracy*

■■■ Defendants also move to dismiss the federal racketeering influenced and corrupt organizations act ("RICO")[17] claims against Prudential because (1) they fail to allege that Prudential was "employed by or associated with" a RICO enterprise as required by 18 U.S.C. § 1962(c); (2) Prudential cannot simultaneously be the RICO enterprise and the person; and (3) Prudential cannot conspire with its employee, Kicklighter. The plaintiffs allege that Prudential was associated with a RICO enterprise, namely "[e]ach Defendants (sic) agreed to participate in, and participated in, a conspiracy to violate 18 U.S.C. § 1962(c) and certain individuals, through their control, Prudential caused that entity to participate in the conspiracy to violate 18 U.S.C. § 1962(c) through the commission of the predicate acts set forth in paragraphs 237 through 251 above." Complaint at 126. An "enterprise" under the RICO statute includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Section 1961(4). While the allegations in the complaint may have been pleaded more clearly, the Court interprets complaints liberally in order to preserve claims where a set

---

ed. *See First Nat'l Life Ins. Co. v. Sunshine–Jr. Food Stores, Inc.,* 960 F.2d 1546, 1550 (11th Cir.1992) ("[S]tate contract and tort laws that impose varying standards upon the administrator of a welfare benefit plan create a significant potential for conflict with ERISA and thus are logically preempted."), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993).

**17.** Plaintiffs contend that the defendants violated 18 U.S.C. §§ 1962(c) and (d). Section 1962(c) provides that

(c) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Racketeering activity includes fraud in the sale of securities. 18 U.S.C. § 1961(1)(D). Plaintiffs also allege that defendants unlawfully conspired to engage in racketeering activity affecting interstate commerce. *See* 18 U.S.C. § 1962(d).

of facts may be proven to show that relief is warranted. Plaintiffs' allegations are sufficient to withstand a motion to dismiss.

■■■■ With respect to defendants' arguments that Prudential cannot simultaneously be the enterprise and the person under RICO and that Prudential cannot conspire with its employee, the Eleventh Circuit previously has decided these issues. *United States v. Hartley,* 678 F.2d 961, 972, 988 (11th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014, *and cert. denied,* 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983). In *Hartley,* the Eleventh Circuit held that, under 18 U.S.C. § 371, a corporation may be able to conspire with its own employees. The Court finds that its reasoning applies here as well. Additionally, a corporation may be simultaneously a defendant and the enterprise under RICO. *Id.* Thus, these points of argument cannot succeed here.[18]

### D. *RICO statutes of limitations*

■■■■ In their complaint, plaintiffs assert that defendants violated the federal RICO statute; however, defendants assert that the plaintiffs' are time-barred under the RICO limitations period.[19] Federal civil RICO actions are subject to a four-year limitations period, *Bivens Gardens Office Bldg., Inc. v. Barnett Bank of Fla., Inc.,* 906 F.2d 1546, 1550 (11th Cir.1990), *cert. denied,* 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991). The Eleventh Circuit has held that

> with respect to each independent injury to the plaintiff, a civil RICO cause of action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury *and* that the injury is part of a pattern.... Because a civil RICO plaintiff must prove that his injury is part of a pattern of racketeering activity, an injured party must know, or have reason to know,

that his injury is part of a pattern before he can be expected to file a civil RICO cause of action.

*Bivens,* 906 F.2d at 1554–55 (emphasis added). The rule set forth in *Bivens,* 906 F.2d at 1555, "requiring plaintiffs to pursue the civil RICO remedy within four years of the time when they discovered, or reasonably should have discovered, that *they are entitled to civil RICO damages for their injury,*" is considered more generous than the general discovery rule applied to other statutes of limitations. *Caproni v. Prudential Securities, Inc.,* 15 F.3d 614, 619–20 (6th Cir.1994). "The principal difference between the two rules, of course, is that the *Bivens* rule requires that a plaintiff discover, or be in a position to discover, the existence of a pattern of racketeering activity in addition to the existence and source of the injury." *Id.* (footnote omitted). The discovery aspect of the rule means that the Court must look to " 'not when the information was actually known, but rather when in the exercise of due diligence it should have been known.' " *Durham v. Business Management Assocs.,* 847 F.2d 1505, 1508 (11th Cir.1988) (discussing analogous accrual rule under section 10(b) of the 1934 Securities Exchange Act) (quoting *Hunt v. American Bank & Trust Co.,* 783 F.2d 1011, 1013 (11th Cir.1986)).

To ascertain whether any or all of plaintiffs' RICO claims may be barred, the Court looks to the plaintiffs' complaint and its allegations of each injury and the pattern of activity. Plaintiffs allege that, beginning as early as 1985 and lasting until at least April 1989, Kicklighter and Prudential "made numerous untrue and misleading statements and representations of material facts" and "concealed and omitted to state certain material and relevant facts necessary in order to make their statements and representations, in light of the circumstances under which they were made, not misleading" in violation

---

**18.** Defendants' request for certification of these issues for interlocutory appeal is DENIED.

**19.** Although District 65 and the Bureau Funds's standing was conferred by their trustees under ERISA, nothing in the RICO statute prevents the plans from having standing to sue individually as entities under RICO. Therefore, the analysis

above regarding the successor trustees is inapplicable here. The question of when the plaintiffs knew or should have known may be addressed appropriately as when did agents of District 65 and Bureau Funds know rather than when did the current successor trustees have such knowledge.

of federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343 and federal securities laws, 15 U.S.C. §§ 77, 78 et seq. In April 1989, the plaintiffs' ERISA counsel, Michael S. Gordon, discovered that Kicklighter had been sanctioned by the Securities Exchange Commission ("SEC"). Gordon wrote a letter to District 65 and the Bureau Funds indicating that "it appears that Mr. Kicklighter may also have engaged in improper or unauthorized trading activities on behalf of the Trust's account." Although Gordon commenced an investigation of the possible violations, he was not certain that the plans in fact had been injured by conduct of Prudential and Kicklighter. In June 1991, Gordon finally told the trustees that they had been injured and that injury was part of a pattern.

■■■ In *Bivens*, 906 F.2d at 1554, the plaintiff discovered their individual injury prior to discovering that their injury was part of a larger pattern of racketeering activity. In this case, District 65 ostensibly knew of the possible racketeering activity prior to knowing that they were involved in Kicklighter and Prudential's racketeering acts. Nevertheless, they began their inquiry immediately as required by *Bivens*. It is only at the conclusion of that inquiry, when they had discovered, in fact, that they had been injured, that the cause of action begins to accrue.[20] In this case, that is June 19, 1991. Under RICO, such a discovery date renders this action well within the statutory limitations period.

The plaintiffs' allegations of concealment by Prudential and Kicklighter suggest the reason for their failure to discover earlier the pattern of racketeering activity. In order to succeed on these claims, plaintiff must allege facts sufficient to explain why the plaintiffs, even exercising reasonable diligence, could not have discovered the RICO violations within the limitations period. As indicated earlier, the former trustees placed their reliance, under statutory guidelines, on

an ailing elderly man and the young broker Kicklighter. The plaintiffs adequately allege that former trustees did not know that the investment portfolios contained unsuitable securities for ERISA entity investment. Moreover, all transaction slips and trade confirmations were not reviewed by the trustees, but were filed by a clerk. The trustees did not understand the significance of these documents. Through this proper, albeit perhaps unwise, delegation of duties, the trustees were under no responsibility to monitor Mantler's actions. While the trustees were not stripped of their fiduciary obligations, the plaintiff's allegations do not show that the trustees were aware of, but ignored Mantler's failings and Kicklighter and Prudential's misconduct. Therefore, the Court concludes for the purposes of this motion that the trustees did not know the significant problems inherent in the investment program as early as 1987.

The Court does not decide at this time whether fraudulent concealment is recognized as a distinct defense to a statute of limitations bar. The same facts underlying the claims of concealment provide the basis for the plaintiff's allegations that they were unable to discover the pattern of racketeering activity until June 19, 1991. It has not been shown that the plan "plaintiff knew, or should have known, more than four years prior to filing the complaint that [the plan] had suffered an injury *and* that the injury was the result of a pattern of racketeering activity." *Bivens*, 906 F.2d at 1556.[21]

F. *Motion to Join Persons for Just Adjudication*

■■■ Defendants additionally move to dismiss for failure to join Marshall J. Mantler, Sherwyn Syna, Robert Dreyer, David Livingston, and Sol Marcus, as co-fiduciary defendants under ERISA for claims alleging fiduciary liability. This Fed.R.Civ.P. 12(b)(7) motion is made subject to the Court's ruling

---

**20.** To hold otherwise would encourage plaintiffs to file actions prior to having as much knowledge as possible regarding the RICO claims. Such a course likely would lead to unsupported complaints being filed and taxing already limited judicial resources on unworthy cases.

**21.** This decision renders it unnecessary to decide at this time whether (1) mere silence tolls the statute where a fiduciary relationship exists or (2) the pendency of the NASD arbitration tolls the statute.

on the foregoing issues. Alternatively, the defendants move to join the same persons under Rule 19(a). The plaintiffs contend that the trustees and Mantler are merely proper parties and, thus, not subject to joinder under Rule 19(a).

 Co-fiduciary liability is joint and several. *See In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1023 (2d Cir.1992) ("Under ERISA, breaching fiduciaries are jointly and severally liable."); *Jennings v. Pierce*, No. 93 C 2539, 1995 WL 88795 at *2–*3 (N.D.Ill. Mar. 1, 1995). Thus, plaintiffs may bring actions against some of the fiduciaries without bringing an action against all of them. *See Jennings*, 1995 WL 88795 at *2–*3; *Struble v. New Jersey Brewery Employees' Welfare Trust Fund*, 732 F.2d 325, 332 (3d Cir.1984). Review of Rule 19 and Rule 20 makes it clear that the parties are not indispensable parties simply because they may be jointly and severally liable with Kicklighter and Prudential. Instead they are proper parties subject to permissive joinder under Rule 20. Rule 20 provides that

> [a]ll persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to

relief, and against one or more defendants according to their respective liabilities.

Rule 20. The Advisory Committee Notes reveal that Rule 19 does not obligate the joinder of possible joint tortfeasors. Fed. R.Civ.P. 19(a) *Advisory Committee Note* ("[A] tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability."). Neither does ERISA require that the trustees be joined in this action. 29 U.S.C. § 1105(a). While section 1105(a) [22] provides for the joint liability of a co-fiduciary, nothing in that provision directs the Court that the parties are indispensable and must be joined. Accordingly, the defendants' Rule 12(b)(7) motion is DENIED.

## III. CONCLUSION

For the reasons above, the Court DENIES in part and GRANTS in part defendants' motion to dismiss. The Court also DENIES defendants' motion to dismiss for failure to add parties and DENIES their motion to add parties. Plaintiffs and Defendants are DIRECTED to proceed in this matter in accordance with the Local Rules of the Northern District of Georgia.[23]

It is so ORDERED.

### *ORDER ON MOTION TO RECONSIDER OR AMEND*

#### *I. Motion to Reconsider, or, in the Alternative, Motion to Amend Order*

Defendants Prudential Securities, Inc. ("Prudential") and William L. Kicklighter, Jr., move the Court to reconsider a portion of its Order dated February 12, 1996 [1] super-

---

**22.** Section 1105(a) states:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise

> to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

**23.** Because the Court now has ruled on the pending motions, plaintiffs' motion for a pretrial conference and scheduling order in the interim is now MOOT.

**1.** This Order has been superseded by the Corrected Order of this Court dated March 7, 1996. For

seded by Corrected Order dated March 7, 1996. Defendants contend that the Court erred when it concluded that the Employees Retirement Income Security Act ("ERISA") three-year statute of limitations based on "actual knowledge" begins to run when the individual trustees, trustee Goldin and trustee Wolyn, obtained actual knowledge. *See* 29 U.S.C. § 1113(2); Corrected Order at 13. Prudential and Kicklighter submit that the "office of trustee is the proper plaintiff" and, thus, the ERISA statute of limitations began to run when the former trustees—those trustees in whose shoes Goldin and Wolyn now allegedly stand—had actual knowledge.

Review of defendants' contentions demonstrates that they are recasting their argument for imputation of knowledge of the former trustees to the current trustees, a proposition already discarded by the Court. The Court's conclusion that it is these plaintiffs' knowledge which controls whether the ERISA three-year statute of limitations applies, is supported amply in the case law. *See* Corrected Order at 13.

Defendants also argue that the three-year statute of limitations applies to Wolyn's actions against Kicklighter under ERISA, and, as a result, Wolyn is barred from maintaining his claims against Kicklighter. The plain language of the statute clearly shows that the fraud or concealment engaged in by the defendants to delay discovery of the ERISA breaches of fiduciary duty need not continue up until the time of discovery by the plaintiffs. Plaintiffs have alleged that fraud or concealment of the possible violations prevented them from discovering prior to June 1991, that such violations occurred. The fact that plaintiffs closed their accounts in July 1989, does not operate to change the sufficiency of their allegations.[2] Even if the Court were to hold, with respect to this allegation, that Kicklighter's fraud or concealment prevented discovery of the breaches of fiduciary duty until July 1989, Wolyn's complaint nevertheless would be timely under the six-year statute of limitations.

Whether fraud or concealment is proven ultimately is not now before the Court.

The Court, however, is of the opinion that its previous order concluding that the current trustees are the plaintiffs for purposes of this action and, consequently, that it is the timing of their knowledge by which the Court measures the applicable statutes of limitations is a controlling question of law. There is substantial ground for difference of opinion, and immediate appeal may advance the ultimate termination of this litigation. Therefore, the Court hereby amends its Corrected Order, by inserting before Subsection IIB on page 15, the following:

> The Court is of the opinion that the above decision involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from this Order, on this issue, may materially advance the ultimate termination of this litigation. *See* 28 U.S.C. § 1292(b).

Plaintiffs argue against this amendment to the effect that this is not a controlling question of law. However, because of this Court's holding that it is the current trustees alone who have standing under ERISA to bring this action, a question not addressed by either plaintiffs or defendants in the initial motion to dismiss or response thereto, it is inevitably a controlling question of law. Therefore, the Court amends its previous order as designated above.

## II. Motion to Dismiss Racketeer Influenced & Corrupt Organizations Act Claims

■ In late December 1995, after this Court heard oral argument on the issues presented upon Prudential and Kicklighter's first motion to dismiss, Congress amended 18 U.S.C. § 1964(c), the statutory basis for private right of action under the Racketeering Influenced & Corrupt Organizations Act

---

clarity, the Court refers to the March 7, 1996 Corrected Order.

**2.** Plaintiffs need not allege, as advocated by defendants, that Kicklighter's fraud or concealment

was directed "toward Wolyn" to prevent Wolyn from discovering the ERISA violations. Def.s' Br. at 8.

("RICO").[3] Congress limited private actions under RICO by mandating that persons "injured in his business or property by reason of a violation of section 1962" may not "rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c) (as amended Dec. 22, 1995), see Private Securities Litigation Reform Act of 1995 ("Reform Act), Pub.L. 106–47 § 107. The purpose of the amendment was to prevent duplicative recovery for injuries arising out of securities fraud.

█ Defendants contend that this amendment applies retroactively to bar plaintiffs' RICO claims, which allegedly are based on fraud in the purchase or sale of securities. Plaintiffs counter that (1) the predicate acts set forth in their complaint are not based solely upon conduct which would have been actionable as securities fraud, and (2) that even if they were, or other claims are so based, the amendment to the statute does not apply retroactively. Before reaching the retroactivity question, the Court addresses first, whether the plaintiffs' claims of racketeering activity are based upon "conduct that would have been actionable as fraud in the purchase or sale of securities," and, accordingly, whether even if the statute were applied retroactively, plaintiffs' complaint would be affected.

█ Plaintiffs allege as RICO predicate acts wire fraud under 18 U.S.C. § 1343,[4] mail fraud under 18 U.S.C. § 1341,[5] and fraud in the sale of securities under 15 U.S.C. § 77a, et seq., and 15 U.S.C. § 77a, et seq. Wire fraud and mail fraud are included in section 1961(a)'s definition of "racketeering activity" such that they may be considered predicate acts under RICO. However, in section 107, Congress intended to capture claims of wire and mail fraud in connection with purchase or sale of securities as well.

The Conference Committee amends section 1964(c) of title 18 of the U.S.Code to remove any conduct that would have been actionable as fraud in the purchase or sale of securities as racketeering activity under civil RICO. The committee intends this amendment to eliminate securities fraud as a predicate offense in a civil RICO action. In addition, the Conference Committee intends that a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.

141 Cong.Rec. H13691–08, H13704 (Nov. 28, 1995).

---

3. This amendment was enacted as part of the Private Securities Litigation Reform Act of 1995 ("Reform Act"), section 107, which became law on December 22, 1995. Specifically, this amendment was enacted as section 107 of the Reform Act.

4. Section 1343 provides in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both.... 18 U.S.C. § 1343.

5. Section 1341 provides in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for

obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than five years, or both.... 18 U.S.C. § 1341.

Plaintiffs' direct claims of fraud in the sale of securities are of the type contemplated by the amendment. Yet, plaintiffs contend that their claims of wire fraud and mail fraud are based upon conduct not related to the purchase or sale of securities, and, therefore, the Court need not address the retroactivity issue.

In this case, the Court must decide whether the alleged violations of mail and wire fraud stand separately and apart from the plaintiffs' purchase or defendants' sale of securities. Plaintiffs, *inter alia*, direct the Court's attention to the following allegations:

c. Continuing to state on Plaintiffs' monthly account statements that the limited partnerships which they recommended and placed in Plaintiffs' accounts were valued at cost, i.e., equivalent to their purchase price, when, in truth, the limited partnerships were illiquid and had quickly declined in value;

. . . .

k. Misrepresenting that it had reduced and would eventually liquidate the margin balance in the District 65 account;

l. Misrepresenting the cause of the losses in Plaintiffs' accounts as the stock market crash of October 1987 rather than the quality of investments they had recommended and placed in the accounts;

m. Misrepresenting the value of certain securities on Plaintiffs' monthly account statements.

Complaint at ¶ 103. Plaintiffs have alleged that these acts were not in connection with the purchase or sale of securities but cites the Court to *no* case law supporting their proposition. The scope of the Securities Exchange Act's reach by the term "in connection with" is a debated issue, and case law supporting the plaintiffs' contentions, would have been helpful to the Court in reaching its conclusion in this matter.

The question is whether the actions underlying the mail and wire fraud are so remote as to not be in connection with the purchase or sale of securities. Construing plaintiffs' complaint liberally, the Court concludes that these actions relate to the business relationship between plaintiffs and defendants rather than the purchase or sale of securities. Nevertheless, the Court concludes that those proffered allegations concerning defendants' representations as to risk of investments, failure to disclose commission restrictions, and churning of accounts would have been actionable as securities fraud claims, and, thus, the Court must address whether the RICO amendment should be given retroactive effect.

### Retroactivity

The Supreme Court's latest pronouncement on the issue of retroactivity arose in the context of the hotly debated Civil Rights Act of 1991. In *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court developed an analytical framework for trial and appellate courts to follow in determining whether a specific statutory amendment or the various provisions of an entirely new act should be applied to cases pending upon enactment. Under *Landgraf's* analytical scheme, the Court's first question is whether "the statutory text on which petitioner relies manifests an intent that [section 107] should be applied to cases that arose . . . before its enactment." [6]

Defendants first submit that the Court should conclude that the amendment to section 1964(c) applies retroactively by implication. In section 108 of the Reform Act, Congress stated that the changes promulgated by the Reform Act "shall not affect or apply to any private action arising under title I of the Securities Exchange Act of 1934 or title I of the Securities Act of 1993, commenced before and pending on the date of enactment of this Act." Reform Act § 108. Faced with a similar argument of negative

---

**6.** In *Landgraf*, the Court was addressing the applicability of certain sections of the 1991 Civil Rights Act to a case which had been tried, but which was on appeal at the time of the statute's enactment. The statute specifically specified, although ambiguously so, that unless "otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." 1991 Civil Rights Act § 402(a). No such provision exists in the Reform Act.

inference in *Landgraf,* the Supreme Court refused to abandon the general rule against prospective application of a statutory provision where it was argued that Congress made its intent known only by implication. *Landgraf,* 511 U.S. at ——, ——, & n. 12, 114 S.Ct. at 1493, 1494, & n. 12. Hence, neither does this Court presume to impart congressional intention by negative inference in this case.[7]

Defendants' next argument is based upon the "canons of statutory construction" employed in *Landgraf. Id.* at ——, 114 S.Ct. at 1496. Two canons of construction are employed when Congress has not indicated clearly whether the amendment should be applied to pending cases. The first canon was expressed by the Supreme Court in *Bradley v. Richmond Sch. Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). There, the Supreme Court held that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. The second recognized canon was espoused in *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). In *Bowen,* addressing retroactive administrative rules, the court held that "[r]etroactivity is not favored in the law.... Even where some substantial justification for retroactive rule making is presented, courts should be reluctant to find such authority absent an express statutory grant." *Id.* at 208–09, 109 S.Ct. at 471–72.

In *Landgraf,* the Supreme Court recognized the " 'apparent tension' " of these two principles, and reconciled these two tenets by distinguishing the cases to which they are applicable. *Landgraf,* 511 U.S. at ——, 114

S.Ct. at 1497 (quoting *Cohens v. Virginia,* 6 Wheat. 264, 399, 5 L.Ed. 257 (1821)). The Court noted that it generally had applied the first retroactivity axiom in cases where: (1) no vested right of a party was substantially affected; (2) the statute or amendment in question conferred or removed a court's jurisdiction; and (3) procedural rules were involved. *See Landgraf,* 511 U.S. at —— – ——, 114 S.Ct. at 1501–02. On the other hand, the Court had followed the presumption against retroactivity where the intervening provisions (1) affected contractual or property rights; (2) affected rights of a party otherwise considered "vested" in that party; (3) added burdens to private parties not in place prior to the provisions enactment; and (4) imposed "new monetary obligations" on the government. *Id.* at —— – ——, 114 S.Ct. at 1499–1501. To determine into which line of cases the current one falls, *Landgraf* instructs the Court to ask

> whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at ——, 114 S.Ct. at 1505.

At the outset, the Court concludes that the RICO amendment does not "increase a party's liability for past conduct." Nor do plaintiffs contend that section 107 "impose[s] new duties with respect to transactions already completed." Therefore, the Court focuses upon whether section 107 "impair[s] rights a party possessed when he acted."

> Plaintiffs also contend that even if the alleged predicate acts were in connection with the purchase or sale of securities, their claims would be saved by Reform Act § 108 as "arising under" the Securities Act of 1933 or the Securities Exchange Act of 1934. Plaintiffs' claims for RICO violations "arise" under that statute—the statute which provides a private right of action and, if successful, a right to relief. Plaintiffs' remaining claims arise under ERISA, and likewise are not covered by § 108.

---

7. In *Landgraf,* the Supreme Court declined to extend the "expressio unius est exclusio alterius" doctrine to retroactivity. *Landgraf,* 511 U.S. at ——, ——, n. 12, 114 S.Ct. at 1494, 1495, n. 12. Moreover, even if the Court were to find congressional intent by implication, in this case, because Congress's primary focus in passing the Reform Act was to protect against frivolous suits and in passing the amendment to protect against duplicative recoveries in the same suit, the Court would be inclined to find that § 107 was not intended to apply retroactively.

When plaintiffs filed their complaint in 1994, securities fraud and wire and mail fraud based upon actions which could constitute fraud in the purchase or sale of securities were allowable predicate acts in a civil RICO action. Prior to filing their complaint, the statute of limitations for securities fraud actions in this case ran, leaving plaintiffs with only claims under RICO, as well as their ERISA claims. Eliminating predicate acts upon which plaintiffs have rested their complaint for civil RICO remedies, and thereby causing their RICO claims to collapse, impairs the plaintiffs' ability to recover for actions which may have violated federal law. Thus, the statute "would operate retroactively."

Under *Landgraf,* therefore, the statute should not so function in the absence of "clear congressional intent favoring such a result." As noted above, although Congress deliberately chose not to apply the expansive securities law changes retroactively, it did not similarly express its intent with respect to RICO actions standing alone.[8] Congress's intent is not clearly stated. Accordingly, the Court decides that plaintiffs' federal RICO claims are not now barred by the amendment to section 1964(c) of the RICO statute.

Checking this conclusion by reference to the tenet that the Court must apply the law in effect at the time it renders it decision, the Court first notes that a "vested" right of plaintiff has been affected. In this case, no questions of procedural rules or jurisdictional scope are presented. And, to apply the statute retrospectively in light of the Supreme Court's admonition that retroactive application is disfavored, would work a "manifest injustice" on plaintiffs. No expectations of defendants are altered by this decision. Upon filing of the complaint, defendants were on notice that such claims may be brought, and it was not until after the Court rendered its decision on defendants' first motion to dismiss that they raised this objection. By following the Supreme Court's presumption against retroactivity in this case, defendants' burdens are in no way aggravated.

Nevertheless, the Court finds that this is a controlling issue of law to which there is substantial grounds for difference of opinion. Immediate appeal of this order may materially advance the ultimate termination of this case. 28 U.S.C. § 1292(b).

### III. CONCLUSION

Defendants' motion for reconsideration, or, alternatively to amend the Corrected Order is GRANTED. This Court's Corrected Order dated March 7, 1996, hereby is AMENDED as indicated above. Defendants' motion to dismiss RICO claims based on intervening legislation is DENIED.

It is so ordered this 12th day of March, 1996.

### ORDER ON MOTION FOR STAY PENDING APPEAL

■ Before the Court is defendants Prudential Securities, Inc. ("Prudential") and William L. Kicklighter, Jr.'s motion for stay pending interlocutory appeal. On March 13, 1996, the Court certified two issues for interlocutory appeal. *District 65 Retirement Trust v. Prudential Sec., Inc.,* No. 94–cv–3224–WBH (N.D.Ga. Mar. 13, 1996) ("March 13 Order"). To grant a stay of litigation pending appeal, the Court must consider

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987) (habeas corpus action); *see also In re Grand Jury Proceedings (Twist),* 689 F.2d 1351, 1353 (11th Cir.1982) (denying stay of grand jury proceedings for failure to show a likelihood of success on the merits); *Holden v. Heckler,* 584 F.Supp. 463, 497 (N.D.Oh.1984) ("The standards for granting a stay pending

---

**8.** Had this action primarily involved securities fraud claims under the Securities Act of 1933 or the Securities Fraud Act of 1934, Congress's explicit requirement of prospective application may very well have encompassed the entire action and allowed both the RICO claims and securities fraud claims to proceed.

appeal are the same as those for granting a preliminary injunction.").

■ Although the Court certified the issues for interlocutory appeal as involving controlling questions of law about which there was substantial ground for difference of opinion, the Court finds that the above test weighs in favor of plaintiffs. First, as expressed in its March 13 Order, the Court is of the opinion that there are grounds for the interlocutory appeal. However, that conclusion alone does not establish that defendants have shown that they are substantially likely to succeed on appeal. *See* March 13 Order at 2 (denying motion for reconsideration); *id.* at 11 (denying defendants' motion to dismiss RICO claims). Second, for a variety of reasons, this case has been delayed for a number of years since the underlying events. Several of the principals in this case are aging and ill; several have died. While a stay in pretrial proceedings would prevent defendants from having to engage in discovery, a lack of discovery may completely prevent plaintiffs from presenting their claims in the future. And, lastly, the Court finds that the public interest is better served by continuing litigation in this matter.

Therefore, the Court DENIES defendants' motion to stay proceedings pending interlocutory appeal. The Court also DENIES plaintiffs request for attorney's fees or sanctions in connection with this motion.

It is so ORDERED this 22nd day of March, 1996.

### ORDER ON MOTION TO AMEND

■ Before the Court is plaintiffs' motion to amend the Court's order dated March 7, 1996, *District 65 Retirement Trust v. Prudential Sec., Inc.,* No. 94–cv–3224–WBH (N.D.Ga. Mar. 7, 1996) [51]. Specifically, plaintiffs ask the Court to certify for interlocutory appeal the issue of whether their state law claims were preempted by ERISA. Defendants have not opposed this motion.

In its order granting defendants' motion to dismiss in part, the Court held that plaintiffs' state law claims were preempted by ERISA because of the allegations in the complaint that the defendants acted as fiduciaries in their dealings with plaintiffs. Taking the plaintiffs' allegations as true, the Court held that if the defendants were fiduciaries then the ERISA claims were indeed preempted under the law of this circuit.

To certify an issue for interlocutory appeal, the Court must be of the opinion that this is a controlling issue of law to which there is substantial grounds for difference of opinion and that immediate appeal of the order may advance materially the ultimate termination of this case. 28 U.S.C. § 1292(b). There is no question that this is a controlling issue of law, and that immediate resolution by the Eleventh Circuit of this issue would advance the ultimate termination of the litigation. Moreover, upon further reflection, the Court is of the opinion that there is substantial grounds for difference of opinion regarding the extent of ERISA preemption of state law claims. *See Morstein v. National Ins. Servs., Inc.,* 74 F.3d 1135, 1138 n. 3 (11th Cir.1996); *id.* at 1139–40 (Goodwin, J., concurring). Therefore, the Court hereby amends its order dated March 7, 1996, by inserting before Subsection IIC on page 18 the following:

> The Court is of the opinion that the above decision involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from this Order, on this issue, may advance materially the ultimate termination of this litigation. *See* 28 U.S.C. § 1292(b).

Plaintiffs' motion to amend the Court's order dated March 7, 1996, [51] is GRANTED.

It is so ORDERED this 29th day of April, 1996.